SKAGGS v. FLURRY.

5-2024                                                   330 S. W. 2d 713

Opinion delivered January 11, 1960.

*Virgil D. Willis,* for appellant.

*Robert W. Cummins,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a judgment entered by the Boone County Circuit Court in favor of Ira F. Flurry, appellee, against the appellant, A. I. Skaggs. The judgment was in the amount of $300, representing a commission claimed by Flurry for the sale of certain property in Boone County, for which appellee had instituted his complaint.[1] From such judgment comes this appeal. For reversal, appellant argues:

---

[1] Appellee joined in his complaint two causes of action, one for a commission amounting to $250, and the other, $375. Appellant admitted the $250 item, and tendered it below. The jury's verdict was based on the commission sought for $375.

"That under the undisputed testimony appellee did not earn half the commission for the sale of the Brown property to Nelson, because he did not procure a meeting of the minds of the seller and buyer that could be reduced to writing and did not procure a down payment," and the trial court erred in overruling appellant's motion for a directed verdict.

Flurry was employed as a real estate salesman by Skaggs, under an oral agreement, the provisions of which are in dispute. Appellee's version of the agreement was that he would handle a transaction with a prospective customer until such time as the customer tendered the payment of earnest money; that thereafter, appellant would take over and complete the transaction. Appellant's version of the contract was that Flurry and the customer were to reach an agreement on all terms of the sale, including the price to be paid, before he (Skaggs) would take over. Appellant testified that this was his understanding "so far as I was concerned. I don't know how he understood." It was agreed that compensation was to be one-half of five per cent of the selling price of the property. Actually, with this exception, neither party was too definite or emphatic in relating the terms of the contract.

The record reflects that Skaggs introduced Flurry to Herbert Nelson, and requested that Nelson be shown some property which was listed with Skaggs. Flurry took Nelson out to the property, known as the Brown farm, in February, 1957. The two looked at the barns, well, pump, springs, and other features of the property, and discussed price and terms, but no sale was made. Around the middle of July, Nelson returned and appellee again showed him the Brown property. On August 28th, Nelson wrote Skaggs from his home in Iowa, offering $12,000 for the place, and sending his check for $500 as earnest money. This offer was not accepted by the owner of the farm, and Skaggs notified Nelson of that fact. In September, Nelson returned to Harrison, and signed an agreement for the purchase of the farm with Skaggs. Appellee therefore contended that

he was entitled to his commission, while appellant, under his version of the agreement, contended that Flurry had not proceeded far enough with the transaction. In fact, Skaggs testified that Flurry was not employed by him ''from about July on.'' However, appellant admitted that Flurry's license remained in the office, and the latter would come by occasionally. Flurry contended that he worked for Skaggs until the end of September, and testified that on the day the $500 check was received in the office, he (Flurry) asked Skaggs to let him take the purchase agreement to the property owner, Brown, get it signed, and place the papers in the mail. He testified Skaggs replied ''* * * that he was overseeing some work over there and he said no need for both of us to drive over there, he said I am going right by his house, and he said one of us should be around in case some customers come in and he said if you will stay around I will get the thing signed.'' Whether Flurry was still an employee of Skaggs, is not, in itself, determinative of the outcome of the litigation, though this being in dispute, was, of course, a jury question.

There were really only two issues to be resolved, which were properly presented to the jury by the court in its instructions. First, what were the terms of the oral contract between the parties, and second, did appellee's action constitute performance on his part, and entitle him to a commission on the sale of the property. According to the undisputed evidence, there was no intervening act on the part of Skaggs between the time of the last showing of the property (in July) by Flurry, and the subsequent receipt of the check for $500. At any rate, there was sufficient evidence to support a verdict if the jury accepted appellee's version of the terms of the agreement. Appellant treats the negotiations with Nelson as separate transactions, pointing out that the seller would not accept Nelson's offer of $12,000,[2] but we do not agree with this interpretation, for under appellee's version, his duty under the contract was met

[2] The property sold for $15,000.

when the check for earnest money was received. The jury so found.

Affirmed.